UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                              CRIMINAL ACTION

VERSUS                                                                         NO. 13-241

VANDALE THOMAS                                                          SECTION "K"(1)

ORDER AND REASONS

Before the Court is Vandale Thomas' Motion for Acquittal and/or For New Trial (Doc. 65). Having reviewed the motions, memoranda, record, and relevant law, the Court finds no merit in the motion for the reasons stated herein.

I.   BACKGROUND

Mr. Thomas was employed by the Traffic Court for the City of New Orleans and referred to his position as that of its Chief Financial Officer. (Trial Exhibit 3.44 and 3.45). In that capacity, the Government alleged that Mr. Thomas embezzled over $800,000.00 by grossly over-billing Traffic Court for his services. On November 1, 2013, the Government handed down an indictment[1] arising out of his activities. Counts 1, 2, and 3were brought against the defendant for theft concerning programs receiving federal funds for 3separate years in violation of 18 U.S.C. § 666(a)(1)(A)(i)(ii). Counts 4, 5, and 6 concerned money laundering of those funds through casinos and the purchase of a high-end, luxury vehicle, and Counts 7, 8, 9, 10, and 11 were for

---

[1]Originally, it was a 12 count indictment; however, one structuring count was dismissed prior to trial, resulting in a trial on an 11 count indictment.

structuring transactions to evade reporting requirements in violation of 31 U.S.C. 5324(a) . The matter came to trial, and on October 10, 2014, Mr. Thomas was convicted on all counts.

The instant motion filed pursuant to Fed. R. Crim. P. 29 and 33 was filed on October 24, 2014.  As specific grounds for the motion, the defendant maintains (1) there was insufficient evidence to support a finding of guilty; (2) the Court erred in its failure to dismiss the indictment as it fails to invoke the Court's jurisdiction or to state an offense;  (3) the Court erred in allowing the use of summary evidence; and (4) the Court erred in allowing the use of certain Rule 404(b) evidence.

## II.     LEGAL STANDARDS

### A.     Motion for Acquittal

A motion for judgment of acquittal challenges "the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(quoting *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir.2005)). Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also United States v. Hope,* 487 F.3d at 227–28.  The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or

innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522.

In viewing the evidence in the light most favorable to the prosecution, the court must "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001) ("All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence."). The court must also draw upon "*reasonable* inferences from the evidence to support the verdict." *United States v. Percel,* 553 F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (emphasis added). Though the court may not "weigh[] the evidence or assess[] the credibility of witnesses," *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)(citations omitted), "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir.2011) (quoting *United States v. Rojas Alvarez*, 451 F.3d 320, 333-34 (5th Cir. 2006)).

Nevertheless, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir.1998)). "Circumstances altogether inconclusive, if separately considered, may, by their

number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir.2012). "But the evidence presented must allow the jury to find every element of the offense beyond a reasonable doubt." *United States v. Uvalle–Patricio*, 478 F.3d 699, 701 (5th Cir.2007) (internal quotation and citation omitted).

### B. Motion for New Trial

Rule 33 states that, upon the defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). "The burden of demonstrating that a new trial is warranted 'in the interest of justice' rests on the defendant." *United States v. McElwee,* 2010 WL 235007, *2 (W.D.La. Jan. 15, 2010) citing *United States v. Soto–Silva,* 129 F.3d 340, 343 (5th Cir.1997). Rule 33 motions are not favored and are viewed with great caution. *United States v. Blackthorne,* 34 F.3d 449, 452 (5th Cir.2004). "The grant of a new trial is necessarily an extreme measure, because it is not the role of the judge to sit as a thirteenth member of the jury." *United States v. O'Keefe,* 128 F.3d 885, 898 (5th Cir.1997); *but see United States v. Robertson,* 110 F.3d 1113, 11120 n. 11 (5th Cir.1997).

"Motions for new trial are based either on the grounds that the verdict was against the weight of the evidence or that some error was committed by the court or the prosecution which substantially affects the rights of the accused." *United States v. Simms*, 508 F. Supp. 1188, 1202 (W.D. La. 1980). In the Fifth Circuit, "the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of

evidence preponderates against the verdict." *United States v. Wright,* 634 F.3d 770,775 (5th Cir. 2011); *see Wall*, 389 F.3d at 466.

Unlike the Rule 29 motion where the evidence must be viewed in a light most favorable to the verdict, in determining whether to grant a Rule 33 motion, the Court "may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005)(citing *Robertson*, 110 F.3d at 1117).  "[T]he decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997). Thus, the court has broad discretion to grant a new trial "in the interest of justice." *United States v. Scroggins*, 379 F.3d 233 (5th Cir.2004), *vacated on other grounds*, 543 U.S. 1112, 125 S.Ct. 1062, 160 L.Ed.2d 1049 (2005); *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979).  Deference is given to the district court because it actually observed the demeanor of witnesses and their impact on the jury. *Wall,* 389 F.3d at 465; *O'Keefe,* 128 F.3d at 893. "[E]vidence which merely discredits or impeaches a witnesses' testimony does not justify a new trial." *United States v. Blackthorne*, 378 F.3d 449, 455 (5th Cir. 2004)(citation omitted).  A new trial may be appropriate where the evidence only tangentially supports a guilty verdict and the evidence "preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Tarango*, 396 F.3d at 672 (citations omitted).  However, the court must not usurp the jury's function "or simply set aside a jury's verdict because it runs counter to result the district court believed was more appropriate." *Id.* at 672 (citations omitted).

### III.  DISCUSSION

#### A.  Sufficiency of the Evidence

The defendant contends that this verdict should only be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt.  *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001).  The entirety of defendant's argument to support his contention that there was insufficient evidence is as follows: "Defendant reiterates his arguments submitted to the jury and submits that a fair reading of the evidence would lead to a conclusion that it was insufficient to support a finding of guilty."

The evidence presented to the jury was overwhelming, viewing the evidence in the light most favorable to the prosecution, and considering the countervailing evidence as well as the evidence that supports the verdict in making this assessment. *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001).

As to Counts 1, 2, and 3 concerning the theft of federal funds in violation of 21 U.S.C. 666(a)(1)(A)(i)(ii)[2], the Government had to establish the following elements:

---

[2]Section 666 provides:

> (a) Whoever, if the circumstance described in sub-section (b) of this section exists–
> (1) being an agent of . . . a **local government or any agency** thereof–
>> (A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner . . ., property that–
>>> (i) is valued at $5,0000, and
>>> (ii) is owned by, or **is under the care, custody or control of such government or agency**;
>
> shall be fined under this title, imprisoned not more than 10 years or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the . . . **government**, **or agency** receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance, or other form of Federal assistance.

>     (1) That Vandale Thomas was an agent the City of New Orleans;
>
>     (2) That the City of New Orleans was a local government that received in any one year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guaranty or other form of federal assistance;
>
>     (3) That Vandale Thomas knowingly embezzled, stole, obtained by fraud, or knowingly converted to the use of any person other than the rightful owner without authority property that was owned by, under the care, custody, or control of the City of New Orleans; and
>
>     (4) That the property had a value of $5,000 or more.

Committee on Pattern Jury Instructions, District Judges Association, *Fifth Circuit Pattern Jury Instructions (Criminal Cases)* (2012 Edition) at 180-82.

An agent is defined in the statute as " a person authorized to act on behalf of another person or a government and, in the case of . . . a government, includes a servant or employee, and a partner, director, officer, manager, and representative."  21 U.S.C. 666(d)(1).  The evidence was overwhelming that Mr. Thomas was an agent of Traffic Court and thus the City of New Orleans.  First, he held himself out as Chief Financial Officer for Traffic Court.  See Tr. Exh. 3.44 (January 2011 letter from Thomas to Phil Whitman); Tr. Exh. 3.45.   As Debra Hall,

---

(c)   This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

(d)   As used in this section–
(1) the term **"agent" means** a person authorized to act on behalf of another person or a government **and, in the case of . . . a government, includes a servant or employee, and a partner, director, officer, manager, and representative**.

(2) the term **"government agency**" means a **subdivision of the executive, legislative, juridical, or other branch of government, including a department**, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program.

(3) the term "**local" means of or pertaining to a political subdivision within a State**.

7

the judicial administrator for New Orleans Traffic Court, testified,  Mr. Thomas had the unfettered access and control of Traffic Court's finances.  He had the full authority to "make entries into the system, to generate checks from the system, to reconcile the system, to move funds, moneys across funds in the system."  Trial Tr.,  Oct. 7, 2014, p. 113 (Direct Debra Hall).  The testimony of Judge Mark Shea  and Judge Robert Jones further supported the jury's finding that Mr. Thomas  was an agent.

Moreover pursuant to 21 U.S.C. § 666(d)(2), Traffic Court is an agency of the City of New Orleans, as it is a department of the city's government.  The symbiotic relationship between Traffic Court and the City of New Orleans was made clear by Debra Hall's testimony.  Traffic Court is a department of the city and could not function without the resources, fiscal and otherwise that the city provides.  Trial Tr.,  Oct. 7, 2014 at 106-108.  The City is statutorily required to provide facilities, equipment and protection to ensure the proper functioning of Traffic Court.  La. Rev. Stat. Ann. 13: 2509 (2013).  Additionally, the judges' salaries and benefits, are provided by the City, as is money to pay for the electricity and the air conditioning of the Traffic Court building itself as was testified to by Judge Shea and Judge Jones.  In return, Traffic Court for each year from 2009 through 2011 produced approximately four to five million dollars for the City which it transferred monthly to the City.  Trial Tr., Oct. 8, 2014, at 4. (Judge Jones Direct).

As to the second element, clearly, the City of New Orleans received  over $90 million in federal grants in 2009, $27 million in 2010; and more than $29 million in 2011.  City of New Orleans, 2013 Annual Operating budget at 66, *available at* http://www.nola.gov/getattachment/Mayor/Budget/2013-Adopted-Budget-Book.pdf.

As to the third element, despite argument to the contrary, the testimony of Brent McDougall from the Louisiana Legislative Auditor's office, demonstrated that the defendant substantially over-billed Traffic Court. For example, Mr. Thomas billed more than 24 hours per day in eight separate months during the relevant time period. He had back-dated a substantial amount of transactions and he printed a substantial amount of checks made payable to himself. (Trial Tr. 162 of 239, October 6, 2015). The only significant testimony presented to counter this testimony was that of the defendant himself who testified that deceased Judge Dannel orally authorized him to bill these amounts. The jury rejected this testimony.

Finally, it was clear that the amount in controversy was more than $5000.00 as demonstrated by the testimony of Mr. McDougall.

Thus, considering all the evidence, the Court finds that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Hope,* 487 F.3d at 227–28. Given that, Counts 4, 5, and 6 concerning money laundering of those funds through casinos and the purchase of a high-end, luxury vehicle, and Counts 7, 8, 9, 10, and 11 were for Structuring Transactions to Evade Reporting Requirements in violation of 31 U.S.C. 5324(a) stand as well. The Court will now turn to defendant's second argument.

### B.    The Court Erred in its Failure to Dismiss the Indictment as It Fails to Invoke the Court's Jurisdiction or to State an Offense

The defendant contends that the allegations of the indictment were insufficient to allege that Mr. Thomas was an "agent" for purposes of section 666. Defendant argues that in order for him to be subject to this statute, he must be an "agent of the entity that receives federal funds." He claims that lacking in the indictment is any language which "would lead this Court to determine that Mr. Thomas had any authority to act for or bind the City of New Orleans Traffic Court.

As noted in detail above, the definitions of the statute provide the basis for the criminal indictment of Mr. Thomas. The indictment specifically states that the City of New Orleans in a municipality located in Louisiana and Eastern District of Louisiana. (Doc. 1, ¶1). It alleges that the City of New Orleans Traffic Court ("Traffic Court") is a department of the City of New Orleans. (Doc.1, ¶ 2). It alleges that the City received federal assistance in excess of $10,000 for 2009, 2010 and 2011. (Doc. 1 ¶3). It alleges that Mr. Thomas was the Chief Financial Officer for Traffic Court and as such was an agent of the City of New Orleans Traffic Court. (Doc. 1, ¶ 6). The Government alleges that from 2008 to 2011, the City of New Orleans and Traffic Court agreed to compensate Mr. Thomas for "accounting services" and "financial services" not to exceed $627,000.00. (Doc. 1, ¶16). However, from November 24, 2008 to December 5, 2011, Mr. Thomas submitted more than 170 invoices alleging he had performed over $1.3 million dollars in "accounting services and "financial services" for the City of New Orleans and Traffic Court. (Doc. 1, ¶17). As a result, the City of New Orleans an dits department, Traffic Court,

paid Mr. Thomas in excess of $1.3 million as a result of the more than 170 invoices submitted by him. (Doc. 1, ¶18).

### Federal Funds Nexus

Any argument that as a legal matter the indictment was deficient and as such a judgment of acquittal should be entered is without merit. The holding by the United States Supreme Court in *Sabri v. United States*, 541 U.S. 600 (2004) makes clear that § 666 does not require a nexus between criminal activity and federal funds. As the Supreme Court stated upholding the constitutionality of the statute, "Money is fungible, bribed officials are untrust-worthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there." *Id.* at 606.

As first held in *United States v. Westmoreland,* 841 F.2d 572 (5th Cir. 1988), no connection is required between the federal funds allocated to the government entity and the illegal conduct alleged of the agent charged. Instead all that is required is the Government's receipt of more than $10,000.00 a year. This interpretation was underscored in *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002) and its analysis of § 666. Both Judge Weiner and Judge Duhe in his concurrence made clear that under Fifth Circuit law as well as Supreme Court holdings, federal funds need not be directly involved in a violation of the statute.

Section 666 requires that the . . . **government**, **or agency** receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract,

11

subsidy, loan guarantee, insurance, or other form of Federal assistance. As previously noted, section 666(d)(2) provides that:

> (2) the term **"government agency"** means a **subdivision of the executive, legislative, juridical, or other branch of government, including a department**,

The indictment alleges that the City of New Orleans is a municipality and that the City of New Orleans Traffic Court ("Traffic Court") is a department of the City of New Orleans. It also alleges that the City of New Orleans received federal assistance in excess of $10,000 for each year implicated in each count.

*United States v. Moeller*, 987 F.2d 1134, 1136 (5th Cir. 1993) speaks to this relationship between two governmental agencies. In *Moeller* the Fifth Circuit reversed the district court where it had dismissed indictment for of former Texas Federal Inspection Service Officials (TFIS) for awarding consulting contracts to one of the co-defendants as compensation for soliciting campaign contributions to support candidacies of Texas Agriculture Commissioner. The district court found that the specific assistance program ("TFIS") did not receive the requisite $10,000 in federal assistance. Relying on *Westmoreland,* the Fifth Circuit found that FRIS is a **subdivision** of TDA which indisputably received the requisite amount of federal funding. It found that the defendants were actually agents of the Texas Department of Agriculture ("TDA") under the TFIS operating agreement and that since the TDA received more than $10,000 in federal funds, jurisdiction was present. As noted, it is clear that evidence had been presented in the lower court.

Here, it is clear that the Traffic Court of New Orleans is a subdivision or department of the City of New Orleans.

**Allegations Concerning Mr. Thomas as an Agent**

As to the issue of whether Mr. Thomas was an agent, as stated in the notes to the Fifth Circuit Pattern charges of 2012 concerning the definition of agent:

> The statute broadly defines "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. §666(d)(1). However, the Fifth Circuit has held that "the statutory term 'agent' should not be given the broadest possible meaning ... but instead should be construed in the context of §666 to tie the agency relationship to the authority that a defendant has with respect to control and expenditure of the funds of an entity that receives federal monies." *United States v. Phillips*, 219 F.3d 404, 415 (5th Cir. 2000). The Fifth Circuit has stated that "for an individual to be an 'agent' for the purposes of §666, he must be 'authorized to act on behalf of [the agency] with respect to its funds.'" *United States v. Whitfield*, 590 F.3d 325, 344 (5th Cir. 2009) (reversing all convictions for federal program bribery under 18 U.S.C. §666 but affirming convictions for mail and wire fraud, and remanding for re-sentencing), *aff'd after re-sentencing sub nom. United States v. Teel*, 691 F.3d 578 (5th Cir. 2012).

Committee on Pattern Jury Instructions, District Judges Association, *Fifth Circuit Pattern Jury Instructions (Criminal Cases)* (2012 Edition) at 182.

*Moeller*, also provides guidance as to the agent issue. Using the rubric framed by the Fifth Circuit in *Moeller* to determine concerning the agency question makes Thomas subject to the prohibitions found in § 666 for his actions, "the critical inquiry" as applied here would not be the role of the Traffic Court and whether it interposes a separate entity shielding any violation of § 666, but the role of Mr. Thomas. Specifically, Mr. Thomas was an agent of the City of New Orleans as he performed his functions for the City of New Orleans. As restated in *United States*

*v. Shoemaker*, 746 F.3d 614, 620 (5th Cir. 2014), "an agent is someone authorized to act on behalf of the organization or government no only in a general manner, but "with respect to its funds".  Moreover, Section 666 defines "agent" as an "officer" and **"government agency**" means a **subdivision of the executive, legislative, juridical, or other branch of government, including a department**.

The indictment has alleged that the Traffic Court is a department of the City of New Orleans.  Statutorily the City of New Orleans is required to pay the salaries of the judges and the maintenance of the courthouse.  Evidence has been provided that moneys flow between these to entities and that Mr. Thomas had control of that flow as an officer of a  department of the City of New Orleans–that being its Traffic Court.   Thus, the indictment is sufficient in this manner.

**Bona Fide Salary**

Clearly, the allegations concerning the amounts received by Mr. Thomas that were not earned and were in excess of the contracted amount suffice to demonstrate that these amounts were **not bona fide salary**.   A salary "is not bona fide or earned in the usual course of business under § 666(c)if the employee is not entitled to the money."" *Unites States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007).   The Government demonstrated through aforementioned testimony of of Mr. McDougall that from 2008 to 2011, the City of New Orleans and Traffic Court agreed to compensate Mr. Thomas for "accounting services" and "financial services" not to exceed $627,000.00[3]; however, he submitted more than 170 invoices for allegedly performing over $1.3

---

[3] While the indictment gives this figure as the amount for which Traffic Court contracted, in cross examination Mr. Thomas stated that the written contracts were for only $447,000. Trial Transcript, October 9, 2014 at 85 of 161.

million dollars in "accounting services and "financial services" for the City of New Orleans and Traffic Court. Instances of his billing more hours than in any single day were presented through the testimony of Mr. McDougall. Instances of double billing were also demonstrated. Again, the seminal explanation provided to demonstrate that these amounts were bona fide salary was that Mr. Thomas who testified that deceased Judge Dannel orally authorized him to bill these amounts. Clearly, the jury did not find this explanation compelling.

### C. Use of Summary Evidence

Mr. Thomas contends that the summary evidence introduced through the testimony of Brent McDougall was improperly admitted. He summarily states that the exhibits "did not accurately reflect the content of the original materials." (Doc. 65-1 at 15 of 23). Moreover, he contends that there was no underlying evidence introduced which McDougall could have summarized; his summary contained "implied conclusion" and were provided to explain and analyze not only documents but the testimony non of which is permissible under Federal Rule 1006. Mr. Thomas provides not one example to support these sweeping conclusions and conclusory statements.

This Court dealt with this issue before trial and ruled that the summary evidence would be admitted. As it noted then, in *United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991), for the introduction into evidence of summary evidence, the Government must establish at trial that:

> (1) the charts are based on competent evidence before the jury; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) the person who prepared the charts is available for cross-examination; and (4) the jury is properly instructed concerning their consideration of the charts.

15

*United States v. Winn,* 948 F.2d 145, 159 (5th Cir. 1991) citing *United States v. Goodwin*, 470 F.2d 893, 899 (5th Cir. 1974), *cert. denied, 411 U.S. 969 (1973; McDaniel v. United States*, 343 F.2d 785 (5th Cir.), *cert. denied*, 382 U.S. 1965).

Given that the defendant never disputed that (1) the Government provided the original materials to him, (2) that the materials were indeed voluminous, and (3) that the summaries were provided in a timely manner (indeed no later than September 10, 2014), the Government complied with letter of the rule. These charts simply entailed the results of mathematical equations and do not contain "expert opinion" that would fall under Fed. R. Evid. 702, and it stands by its original ruling.

The Court overruled the objection with the requirment that the proper foundation be laid that the charts were based on competent evidence. This was accomplished. Moreover, Brent McDougall was available for cross-examination, and the Court properly instructed the jury concerning their consideration of the charts. *United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991). As such, there is no merit in this claim.

### D. Rule 404(b) Evidence

Mr. Thomas' arguments in this regard are identical (verbatim) to those contained in his Objection to the Notice of Intent to Use Evidence (Doc. 44), so the Court reiterates and

incorporates by reference its decision in that regard as found in its Order and Reasons (Doc. 72) entered on October 3, 2014.   Accordingly,

**IT IS ORDERED** that Vandale Thomas' Motion for Acquittal and/or For New Trial (Doc. 65) is **DENIED.**

New Orleans, Louisiana the 15th day of May, 2015.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE**